IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

CITY OF LA CROSSE,

                            Plaintiff,

    v.

FAIRWAY OUTDOOR FUNDING, LLC.,
d/b/a LAMAR ADVERTISING OF LA CROSSE,
trade name THE LAMAR COMPANIES,                  OPINION and ORDER

                            Defendant,                                20-cv-549-jdp

    v.

CRAIG THOMPSON and
WISCONSIN DEPARTMENT OF
TRANSPORTATION,

                            Third-party defendants.

---

    At the edge of downtown La Crosse, near a traffic artery, sits a modest commercial building. The city purchased the building intending to spearhead redevelopment of the area. The building isn't much to look at, with a sheet-metal structure tacked onto one side. But there is a billboard on the roof that generates a small but steady income for defendant, the outdoor advertising company known as Lamar.

    The billboard has been there for decades, but when the city purchased the building, Lamar's rooftop lease ran year-to-year, subject to termination with 60 days' notice before the annual renewal date. The city provided timely notice of termination, but Lamar has refused to remove the billboard, demanding compensation for what it says is a governmental taking of its property.

    This case began in state court, with the city seeking a declaration of its right to terminate the lease and an order requiring Lamar to take down the billboard. Lamar removed the case to

federal court, asserting counterclaims against the city and a claim for compensation from the Wisconsin Department of Transportation and its secretary, Craig Thompson.

All parties move for summary judgment. No one disputes the city's right to terminate the lease. The parties' many claims boil down to a single question: whether the city has merely exercised its rights as a landlord, or whether the city has acted as a governmental entity, taking Lamar's property for a governmental purpose. The court concludes that the city has merely exercised its rights as a landlord; it has taken no property from Lamar. The court will grant summary judgment to the city and to the DOT.

## UNDISPUTED FACTS

The material facts are undisputed.

Defendant is a limited liability company that does business as Lamar Advertising of La Crosse. Through a series of limited liability companies, defendant is a wholly owned subsidiary of Lamar Media Corp., a Delaware corporation whose principal place of business is Baton Rouge, Louisiana. The court will refer to defendant as "Lamar."

Lamar and its predecessors have for decades leased the rooftop of a commercial building in La Crosse from the building's now-former owner, Mississippi Welders Supply. Mississippi Welders Supply and Lamar entered the current lease, a written one, in 2004. Dkt. 31-3. The initial term was ten years, followed by a five-year renewal term that ended on February 28, 2019. Then, by its terms, the lease ran year-to-year, subject to termination by either party, with notice of nonrenewal at least 60 days before the annual renewal date.

Mississippi Welders Supply put the building on the market in the fall of 2019. The city purchased the building in November, intending to redevelop the property with a prominent

building that would serve as the northern gateway to the La Crosse downtown. The city took the property subject to all existing leases, including Lamar's rooftop lease. The city sent Lamar a timely nonrenewal notice and asked Lamar to remove the billboard by February 28, 2020.

Lamar refused to remove the billboard and demanded compensation of $729,300 or that the city allow it to build multiple digital billboards at other locations. At the time of termination, the billboard produced a net profit to Lamar of about $25,000 annually. Lamar's appraisal expert in this case has calculated the present value of that income stream to be $367,400, on the assumption that Lamar would be entitled to maintain the billboard indefinitely. Lamar asserts that the present value of the income stream is the value of the property taken.

This court has jurisdiction under 28 U.S.C. § 1332 because the parties are diverse in citizenship and more than $75,000 is in controversy.

## ANALYSIS

The parties have diametrically opposed views of the case. For the city and the DOT, this is an eviction action. For Lamar, it's a case of an uncompensated governmental taking.

All three parties move for summary judgment. The familiar standards apply. Summary judgment is appropriate if the moving party shows that there is no genuine dispute of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). On cross-motions for summary judgment, the court evaluates each motion separately, construing the facts and drawing all reasonable inferences from those facts in favor of the nonmovant. *Wis. Cent., Ltd. v. Shannon*, 539 F.3d 751, 756 (7th Cir. 2008). The material facts are not disputed, and the case turns on the application of legal principles to those facts.

Lamar's core contention is that the city took Lamar's property for public use without paying just compensation. Against the DOT, Lamar asserts a Wisconsin statutory claim under Wis. Stat. § 84.30, Wisconsin's implementation of the federal Highway Beautification Act, which requires the state to pay compensation for the removal of certain signs. Lamar also asserts common-law claims based on the theory that it is an aggrieved tenant whose property has been invaded, a claim under the federal Highway Beautification Act, and a petition for inverse condemnation.

The United States and Wisconsin constitutions both prohibit the taking of private property without just compensation. U.S. Const. amend. V; Wis. Const. art. I, § 13.7. Wisconsin courts apply federal Takings Clause standards to determine whether a taking occurred under the Wisconsin constitution. *Wisconsin Med. Soc'y, Inc. v. Morgan*, 2010 WI 94, ¶ 38, 328 Wis. 2d 469, 491, 787 N.W.2d 22, 33. As the court will explain below, Lamar must show that the city took its property to succeed on any of its claims.

But Lamar had no vested long-term interest in the rooftop lease: it ran only year to year. When the city purchased the building, Lamar had a right to the rooftop until February 28, 2020, which the city did not disturb. But as the landlord, the city had a contractual right to terminate the lease after that. Lamar had not acquired any permanent right to keep a billboard on the roof of the building. The general rule is that a government does not commit a taking when it exercises its contractual rights rather than its governmental prerogative. *Squires-Cannon v. Forest Pres. Dist. of Cook Cty.*, 897 F.3d 797, 803 (7th Cir. 2018); *see also Cannon v. Forest Pres. Dist. of Cook Cty., Ill.*, No. 14 C 5611, 2016 WL 2620515, at *5 (N.D. Ill. May 9, 2016) (a government is liable for a taking only when acting in its sovereign or official capacity rather

than as a proprietary actor) (collecting cases). With this general rule in mind, the court turns to Lamar's two main claims.

**A. Lamar's claim for compensation under Wis. Stat. § 84.30**

Lamar's statutory claim for compensation is foreclosed by *Whitewater v. Vivid Inc.*, 412 N.W.2d 519, 140 Wis. 2d 612 (Wis. Ct. App. 1987). In *Whitewater,* a billboard company leased land from the city of Whitewater, which decided not to renew the lease and ordered removal of the billboard. *Id.* The billboard company sought relief under Wis. Stat. § 84.30. *Id.* The court concluded that the statute was designed to limit government takings accomplished through its police power. *Id.* at 619. But a city that terminates a lease in its capacity as a landlord does not owe just compensation. *Id.* "If a landlord chooses not to renew a lease and the landlord happens to be a municipality, a tenant's interest is clearly not compensable under traditional principles of law." *Id*. This case, like *Whitewater*, calls for a straightforward application of basic principles of landlord-tenant law. Applying those principles, the city is entitled to evict Lamar and require it to remove the billboard.

Lamar argues that *Whitewater* has been superseded by *Vivid, Inc. v. Fiedler*, 219 Wis. 2d 764, 778, 580 N.W.2d 644 (1998). But Lamar's argument is misguided for two reasons.

First, Lamar disregards the Wisconsin Supreme Court decision in *Vivid, Inc. v. Fiedler*, 182 Wis. 2d 71, 512 N.W.2d 771 (1994), from an earlier phase of the *Vivid* litigation. In the 1994 decision, the supreme court endorsed the court of appeals' *Whitewater* decision and the general principle that a municipality exercising it rights as a landlord is not liable to the billboard owner for just compensation under Wis. Stat. § 84.30. *Id*. at 80–81.

Second, Lamar reads the 1998 *Vivid* decision too broadly. The 1998 opinion concerned whether Wis. Stat. § 84.30 provided the exclusive remedy for the removal of a sign, or whether

5

the owner might also proceed under the inverse condemnation statute, Wis. Stat. § 32.10. The question mattered because attorney fees would be available under § 32.10, but not under § 84.30. The supreme court held that § 84.30 provided the exclusive remedy, regardless of "whether the sign is removed because of eminent domain, the HBA, a local ordinance, or any other reason." *Vivid*, 219 Wis. 2d at 788. The point of the decision was to clarify that the sign owner could not recover attorney fees by using the inverse condemnation statute. The question Lamar poses here—whether a municipality or the DOT owes compensation after a legal termination of a lease—was not at issue in the 1998 *Vivid* decision. And nothing in the 1998 *Vivid* decision disavows the court's earlier endorsement of the court of appeals' *Whitewater* decision.

## B. Lamar's constitutional claims

Lamar bases its constitutional argument on *Armstrong v. United States*, 364 U.S. 40 (1960), which Lamar says establishes the principle that "a compensable Fifth Amendment taking occurs when a government entity destroys property rights in a manner not available to a private party." Dkt. 28, at 7. But *Armstrong* is distinguishable because the claimants in that case had a valid legal interest in property taken by the government.

In *Armstrong*, the United States government contracted with Rice Shipbuilding Corporation for the construction of 11 boats. The contract provided that, in the event of Rice's default, the government had the right to terminate the contract and require Rice to transfer to the government ownership of the boats, finished or not, along with all materials purchased for use in manufacturing the boats. Rice defaulted and the government took ownership of the boats and materials. Armstrong and the other petitioners were suppliers to Rice who had not been paid. Under state law, the suppliers had liens on the boats and materials. But those liens

became unenforceable through the ordinary process once the government took ownership, as a consequence of the sovereign immunity of the United States. The Supreme Court held that the destruction of the valid state-law liens was a taking within the meaning of the Fifth Amendment, and thus the government owed compensation to the suppliers.

Lamar says that the city is in the same position of the United States: the city's sovereign immunity prevents Lamar from making a conventional legal claim against the city, so the city has terminated Lamar's property interest leaving it without recourse other than a constitutional takings claim. This argument has several flaws, but the main one is that Lamar has no property interest equivalent to the state-law liens in *Armstrong*.

To pull itself within the ambit of *Armstrong*, Lamar invokes the principle that a billboard actually entails three distinct property interests: the leasehold, the physical billboard structure, and the permit under which the DOT allowed Lamar to erect and maintain the billboard. Lamar concedes, as it must, that the city had the contractual right to terminate Lamar's interest in the leasehold. But, Lamar argues, the city has effectively destroyed the other two interests and owes compensation as a result. The argument does not bear up under scrutiny.

As for the billboard structure, the city hasn't destroyed it. Lamar is free to remove it. In fact, Lamar is *required* to remove it, because Lamar must restore the roof to its original condition under paragraph five of the lease. The cost of removing the structure might exceed whatever value a decades-old billboard structure has. But that was the deal that Lamar made, and the removal of a tenant's fixture is a common landlord-tenant situation that raises no constitutional issue even if the landlord is a governmental entity. Lamar argues further that the structure has been "destroyed" in the sense that Lamar can't use the structure anywhere else because the city won't allow it to erect another billboard in the city. But Lamar has not challenged the city's

7

authority to limit the number of billboards. And the city isn't preventing Lamar from using the billboard structure in any other place where Lamar would have a right to place a billboard.

Lamar misconstrues the billboard permit as a permanent entitlement. Lamar cites several cases holding that a billboard permit constitutes an interest in real estate. Dkt. 28, at 11. For example, in *Adams Outdoor Advert., Ltd. v. City of Madison*, the question was whether billboards should be taxed as real property or personal property. 2006 WI 104, 294 Wis. 2d 441, 717 N.W.2d 803. The Wisconsin Supreme Court reasoned that a billboard permit derives value primarily from the location of the billboard, so it is properly considered to be one of the "rights and privileges appertaining" to the land, thus meeting the statutory definition of "real property" under Wis. Stat. § 70.03. Accordingly, a billboard, together with its permit, is properly taxed as real property rather than as personal property. *Id*. at ¶¶ 82–84. But none of the cited cases suggest that a billboard permit has any value at all once the billboard owner loses the right to occupy the authorized location.

Lamar is now precisely where it would be had Mississippi Welders Supply terminated the rooftop lease: Lamar would have no right to occupy the rooftop after February 28, 2020, and it would be obligated to remove the billboard structure. Lamar would have no recourse against the DOT, because no governmental entity had revoked the permit. All this is another way of saying that the city has simply acted as a landlord, even though its ultimate purpose was the beautification and improvement of the downtown area. Contrary to Lamar's theory of the case, the city has done nothing beyond what a private landlord would be entitled to do.

CONCLUSION

Because Lamar cannot show that the city has taken any of its property, it cannot prevail on its takings or inverse condemnation claims against the city. Because the city has operated within its rights as a landlord, Lamar cannot prevail on its conversion or trespass claims against the city. Neither the city nor the DOT has used its governmental authority to revoke Lamar's right to the billboard location, so Lamar has no viable claim against the DOT. And Lamar has failed to develop any argument on its federal Highway Beautification Act claim.

The scope of relief that the city seeks is not clear. The city may have until January 5, 2022, to propose orders for the injunctive and declaratory relief that it seeks. Lamar may have until January 26, 2022, to respond.

ORDER

IT IS ORDERED that:

1. Plaintiff City of La Crosse's motion for summary judgment, Dkt. 34, is GRANTED.

2. Defendant The Lamar Company's motion for summary judgment, Dkt. 27, is DENIED.

3. Third-party defendants Craig Thompson and the Wisconsin Department of Transportation's motion for summary judgment, Dkt. 23, is GRANTED.

4. The city's deadline to propose orders for declaratory and injunctive relief is January 5, 2022. Lamar's deadline to respond is January 26, 2022.

Entered December 15, 2021.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge